IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KEVIN PHILLIPS and )<br>DASLYN HINTON )<br>on behalf of themselves )<br>all other similarly situations persons, )<br> )<br>    Plaintiff, )<br> )<br> )<br>v. )<br> )<br>THE COCA-COLA COMPANY, )<br> )<br>    Defendant. ) | CIVIL ACTION NO.<br>1:18-cv-05059-WMR |

## ORDER

This matter comes before the Court on Defendant The Coca-Cola Company's ("TCCC") Motion to Compel Arbitration and Dismiss or Stay the Proceedings as to the claims of Plaintiff Kevin Phillips ("Phillips") [Doc. 6]. After receiving full briefing from the parties, the Court heard oral argument on the motion on March 11, 2019. For the reasons set forth below, the motion is **GRANTED**.

## I.   BACKGROUND

This is a Fair Labor Standards Act "(FLSA") collective action which is based upon violations of the FLSA's overtime provisions. Phillips is a former employee of

the staffing agency Randstad Professionals US, LP ("Randstad") which provided Phillips to TCCC to provide certain services.

As an employee of Randstad, on November 30, 2016, Phillips executed an agreement entitled "Talent Agreement" whereby he agreed to provide temporary professional services to one or more third party businesses which were customers of Randstad (the "Talent Agreement"). On the same day, Phillips also executed an agreement to submit to binding arbitration all disputes which, *inter alia*, related to his employment by Randstad, his client assignments, or his wages and compensation (the "Arbitration Agreement"). In this regard, and in relevant part, Plaintiff Phillips' Arbitration Agreement provides as follows:

> As consideration for accepting or continuing my employment with Randstad, Randstad and I agree to use binding arbitration, instead of going to court, for any "covered claims" that arise between me and Randstad, its related companies, and/or their current or former employees.

> "Covered claims" are any legal claims that relate to my recruitment, hire, employment, client assignments and/or termination including, but not limited to, those concerning wages or compensation…

> I understand and agree that arbitration is the only forum for resolving covered claims, and that both Randstad and I are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration. I also agree that covered claims will only be arbitrated on an individual basis, and that both Randstad and I waive the right to participate in or receive money from any class, collective or representative proceeding. I may not bring a claim on behalf of other individuals, and any arbitrator hearing my claim may not combine more

than one individual's claim or claims into a single case, or arbitrate any form of a class, collective, or representative proceeding…

This agreement shall be governed by the Federal Arbitration Act and the Arbitration Act of the state in which I worked for Randstad.  I agree that this agreement may be enforced and administered by a court of competent jurisdiction through the filing of a petition to compel arbitration…

The Talent Agreement also contains its own arbitration provision, which provides as follows:

Any irreconcilable controversy, dispute, misunderstanding, or claim arising out of or relating to this Agreement shall be settled through arbitration pursuant to the Agreement to Arbitrate, which is incorporated herein by reference.

Phillips does not dispute that he was an employee of Randstad and rendered services to TCCC as a Randstad employee. Additionally, it is undisputed that Phillips was paid for the work he performed on behalf of TCCC by Randstad, not TCCC.  Phillips also does not dispute that, as a condition of his employment with Randstad, he entered into the Talent Agreement, pursuant to which, he agreed to provide temporary professional services to one or more third party businesses which were customers of Randstad.  He similarly does not dispute that, as a condition of his employment with Randstad, he entered into the Arbitration Agreement.

## II.   CONTENTIONS OF PARTIES

TCCC argues that Phillips should be compelled to arbitrate his FLSA claim against TCCC because, (1) his claim falls squarely within the scope of the agreements to arbitrate that he signed; (2) TCCC is entitled to invoke Phillips' agreements to arbitrate in the Talent Agreement and the Arbitration Agreement under the doctrine of equitable estoppel; and (3) TCCC is a third-party beneficiary of Phillips' promises to arbitrate in the Talent Agreement and the Arbitration Agreement.  Phillips, in turn, argues that (1) the claim he is asserting against TCCC falls outside of the ambit of the arbitration provisions at issue; (2) the doctrine of equitable estoppel does not apply to the facts of this case; and (3) TCCC is not a third party beneficiary of Phillips' agreements with Randstad to arbitrate.

## II.   ANALYSIS

### A.   Federal Law Favors Arbitration

The Federal Arbitration Act (the "FAA") expressly provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.  The FAA applies to any written arbitration agreement contained in a contract "evidencing a transaction involving commerce."  *Id.* The Supreme Court has expansively construed the phrase "involving commerce" as extending the FAA's reach to the full limit of

4

Congress' Commerce Clause power.  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995).

"The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotation marks omitted).  The FAA both "embod[ies]" and "declare[s] a national policy favoring arbitration."  *Id.*; *Preston v. Ferrer*, 552 U.S. 346, 353 (2008).  The Supreme Court has interpreted the FAA as reflecting both "a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *Concepcion*, 563 U.S. at 333 (citations and internal quotation marks omitted).  "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms."  *Id.* at 339 (citations omitted). This purpose is readily apparent from the FAA's text:

> Section 2 makes arbitration agreements valid, irrevocable, and enforceable as written []; § 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims in accordance with the terms of the agreement; and § 4 requires courts to compel arbitration in accordance with the terms of the agreement upon the motion of either party to the agreement.

*Id.* at 344 (internal quotations omitted).

The Supreme Court has recognized this strong public policy in favor of arbitration.  *See, e.g., id.* at 339 (Section 2 of the FAA reflects both a "liberal federal

policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract"); *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (recognizing the pro-arbitration purposes of the FAA and noting "courts must 'rigorously enforce' arbitration agreements according to their terms"); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)) (enforcing agreement to arbitrate and holding that Congress intended the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts"); *see also Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998) ("The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement.").

As the Supreme Court has emphasized,

> any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). Georgia law is in accord. *See Helms v. Franklin Builders, Inc.*, 700 S.E.2d 609, 611 (Ga. Ct. App. 2010) ("By enacting the [Georgia Arbitration Code], the Georgia General

Assembly has established a clear public policy in favor of arbitration.").

To further the FAA's purposes, the Supreme Court has emphasized that courts should interpret arbitration clauses liberally in favor of arbitration. *See Mercury Constr. Corp.*, 460 U.S. 1, 24-25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Thus, the FAA requires courts to "rigorously enforce" agreements to arbitrate. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

The Supreme Court has noted that Congress' intent was that the FAA should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Preston*, 552 U.S. at 357. (Citations omitted). "A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results." *Concepcion*, 563 U.S. at 346 (internal quotations omitted). The Eleventh Circuit previously explained,

> the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable "under ordinary state-law" contract principles and (b) the claims before the court fall within the scope of that agreement.

*Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4).

7

### B.    Phillips' FLSA Claim Falls Within the Scope of the Arbitration Agreements He Signed

The Arbitration Agreement specifically references the intention that it be enforceable under the FAA, stating that any "covered claims" shall be subject to "binding arbitration" and that the Arbitration Agreement "shall be governed by the [FAA] and the Arbitration Act of the state in which [Plaintiff Phillips] worked for Randstad." *See* Arbitration Agreement, p. 1.  Covered claims, as defined by the Arbitration Agreement, expressly include "any legal claims that relate to [Phillips'] …employment, client assignments and/or … wages and compensation."  *See* Arbitration Agreement, p. 1-2.  It is well settled that the word "any" should be interpreted broadly in the context of a motion to compel arbitration.  *See, e.g., Bullard v. Capital One. F.S.B.*, 288 F. Supp. 2d 1256, 1258 (N.D. Fla. 2003) (reading "any legal claim…regarding" "clause as a "very broad grant" and "not limiting the scope of arbitration in any way").

When Phillips executed the Talent Agreement and the Arbitration Agreement, he agreed to be employed by Randstad and, by virtue of such employment, to provide services to its third-party Customers/clients.  He was then assigned by Randstad to provide services to TCCC as a "Customer" of Randstad under the Talent Agreement. In light of these undisputed facts, TCCC was a Randstad-related company under the Arbitration Agreement.

Moreover, Phillips' agreement to arbitrate "any legal claims that relate to [his]…employment [or] client assignments," would make little sense if such claims did not include claims against the client to which he was assigned to work. Logically, to the extent any such claims might arise during Phillips' employment with Randstad to provide professional services to third-party Customers, such claims would almost certainly involve those Customers who, necessarily, are companies "related to" Randstad.

For these reasons, the Court concludes that Phillips' FLSA claim against TCCC falls within the scope of his agreement to arbitrate in the Arbitration Agreement. The Court reaches the same conclusion regarding Phillip's agreement to arbitrate in the Talent Agreement. In addition to expressly incorporating the Arbitration Agreement by reference, the Talent Agreement also contains clear language that defines the scope of the claims that are subject to arbitration under the Talent Agreement itself – those "arising out of or relating to this Agreement." The Talent Agreement similarly makes clear, that the nature of Phillips' employment with Randstad would involve his assignment to customers of Randstad, which means, that *any* disputes arising out of assignments – regardless of the defendant that Phillips chooses to name – are subject to arbitration, pursuant to Paragraph 18(a) of the Talent Agreement. Paragraphs 1 and 2 of the Talent Agreement, for example,

9

provide that Phillips, by virtue of his at-will employment with Randstad, would provide "temporary professional services to one or more third party businesses ('Customer') on behalf of Randstad."  [Doc. 6-2] Ex. A, ¶¶ 1-2.  Paragraph 1 also specifies that the services Phillips would perform for Randstad "Customers" would be referred to as "Contract Assignments."  *Id.* at Ex. A, ¶ 1.  Other paragraphs in the Talent Agreement set forth requirements and expectations for Phillips during his Contract Assignments with Randstad-related companies, and even provide benefits to such third-party Customers.  In addition, the Talent Agreement contains a specific provision regarding reporting overtime hours, which is the precise basis for the claim he is attempting to assert against TCCC.

Thus, the Talent Agreement sets forth the very terms of Phillips' assignment to provide professional services to TCCC (including terms relating to reporting and being properly paid for all hours worked), which was the entire nature of his employment with Randstad.  It is therefore beyond dispute that the claim he is attempting to assert against TCCC in this action *arises out of or relates to* the Talent Agreement.  Therefore, Phillips' Claim is subject to mandatory arbitration under Paragraph 18(a) of that agreement.

**C.   The Doctrine of Equitable Estoppel Requires Phillips to Arbitrate His Claim Against TCCC**

Phillips' FLSA claim against TCCC is also subject to mandatory arbitration on the basis of equitable estoppel.  "Equitable estoppel allows a non-signatory to an arbitration agreement to compel or to be compelled by a signatory to arbitrate under certain circumstances in which fairness requires doing so."  *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1172 (11th Cir. 2011).  As set forth by the Supreme Court, the scope, validity and enforceability of arbitration agreements, including the right of non-signatories to compel arbitration, is governed by state contract law. *Arthur Andersen, LLP v. Carlisle*, 556 U.S. 624, 631, (2009).  In Georgia, following the principles set forth by the Eleventh Circuit in *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999), courts have applied equitable estoppel in cases in two different circumstances:

> [E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. . . . [Also], application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Price v. Ernst & Young, LLP*, 274 Ga. App. 172, 175-76 (2005) (*quoting MS Dealer*, 177 F.3d at 947).  In *Price*, because Price's fraud claims against the non-signatory defendants directly related to the agreement signed by Price that contained the

arbitration clause, the Georgia appellate court agreed with the trial court that Price was equitably estopped from denying that the arbitration clause applied to his claims. *Id.* at 176; *see also Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 338-39, 685 S.E.2d 304, 310 (2009) (where plaintiffs' claims for construction defects arose under and relied upon agreement containing arbitration clause, equitable estoppel applied to prevent plaintiffs from avoiding arbitration with non-signatory appellants); *Autonation Fin. Servs. Corp. v. Arain*, 264 Ga. App. 755, 761, 592 S.E.2d 96, 101 (Ga. Ct. App. 2003) (equitable estoppel justified where signatory plaintiff's single RICO claim was "sufficiently related" to arbitration contract); *Wallace v. Rick Case Auto., Inc.*, 979 F. Supp. 2d 1343, 1348 (N.D. Ga. 2013) (non-signatory defendant could enforce arbitration where employment-based claims against defendant were clearly related to employment relationship memorialized in agreement containing arbitration clause); *Stalzer v. BDO Seidman LLP (In re Watson)*, No. 1:05-cv-1117-WSD, 2006 U.S. Dist. LEXIS 97834, at *12-13 (N.D. Ga. Mar. 27, 2006) (where plaintiffs' claims were fundamentally related to Consulting Agreement containing arbitration provision, plaintiffs could not avoid arbitration with non-signatory defendant).

In addition, a non-signatory can compel arbitration "where there is a requisite nexus of the claim to the contract together with an integral relationship between the

non-signatory and the other contracting party." *Precision Funding Grp., LLC v. Nat'l Fid. Mortg.,* No. 12-5054 (RMB/JS), 2013 U.S. Dist. LEXIS 76609, at *14 (D.N.J. May 31, 2013) (internal quotation and citation omitted); *see also*, *e.g.*, *Ortiz v. Volt Mgmt. Corp.*, No. 16-cv-07096-YGR, 2017 U.S. Dist. LEXIS 85149, at *4, 6 (N.D. Cal. June 2, 2017) (under theory of equitable estoppel, court found it was "appropriate to allow the nonsignatory defendant to compel plaintiff into arbitration because his claims were intimately founded in and intertwined with his employment relationship with the signatory staffing agency") (internal quotations omitted); *Norcom Elecs. Corp. v. CIM USA Inc.*, 104 F. Supp. 2d 198, 203 (S.D.N.Y. 2000) (recognizing that the Second Circuit as well as several other circuits have estopped a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed).

Here, a nexus and intricate connection clearly exists between Randstad and TCCC. Furthermore, Phillips' FLSA claim relies on the Talent Agreement and the Arbitration Agreement.  In fact, his work assignment with TCCC, that is at the heart of his FLSA claim, would not have occurred *but for* Phillips' employment relationship with Randstad, the terms of which are set forth in the Talent Agreement and the Arbitration Agreement.  TCCC is a "Customer" of Randstad, to whom

Randstad provides temporary workers and confers benefits through its Talent Agreements and Arbitration Agreements with Randstad employees. Phillips himself recognizes the integral and dependent relationship between Randstad and TCCC in his response, acknowledging that Randstad "facilitated Phillips' temporary assignment with TCCC and cut Phillips' paychecks." [Doc. 8] ¶ 8.

Phillips' reliance on *Lawson v. Life of the S. Ins. Co.*, 648 F. 3d 1166 (11th Cir. 2011) is misplaced. In that case, the plaintiffs brought tort and contract claims, alleging that the defendant did not fulfill contractual obligations *from a different contract* than the one containing the arbitration agreement. *Id.* at 1172. Here, Phillips is bringing a claim against TCCC based on his employment relationship with Randstad that is the very subject of the Talent Agreement and the Arbitration Agreement.

Thus, for the reasons stated above, the Court also finds that Phillips should be compelled to arbitrate his FLSA claim against TCCC based on the doctrine of equitable estoppel.

**D.    Phillips is also Required to Arbitrate his Claim Because TCCC is a Third-Party Beneficiary of the Talent Agreement and Arbitration Agreement**

Phillips must also arbitrate his FLSA claim against TCCC because TCCC is a third-party beneficiary of the Talent Agreement and the Arbitration Agreement. It

is well established that "a non-party to a contract containing an arbitration clause may compel parties to the contract to arbitrate if it is determined the non-party is a third-party beneficiary to the contract." *Mason v. Midland Funding LLC*, No. 1:16-cv-02867-LMM-RGV, 2018 U.S. Dist. LEXIS 133530, at *52 (N.D. Ga. May 25, 2018) (*quoting Mims v. Glob. Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1354 (S.D. Fla. 2011)).

The recent factually analogous case of *Berryman v. Newalta Envtl. Servs.*, Civil Action No. 18-793, 2018 U.S. Dist. LEXIS 186789 (W.D. Pa. Nov. 1, 2018) is instructive.  In that case, plaintiff Berryman worked for Smith Management, a staffing company, and as part of that employment, performed services for Newalta. Berryman signed a contract with Smith Management, including an arbitration agreement.  Berryman filed a federal court action against Newalta, claiming that he worked for Newalta and that he, and other similarly situated workers, regularly worked more than 40 hours per week and were, therefore, entitled to overtime pay under the FLSA.  In response, Newalta moved to compel arbitration, asserting that Berryman should be compelled to submit his claim to binding arbitration based on the arbitration agreement he signed with Smith Management.

Determining that the crux of Berryman's case was whether Newalta, as a non-signatory to the agreement between Berryman and Smith Management, was a third-

party beneficiary under the agreement (*Id.* at *6), the Court found that "[a] third-party beneficiary to a contract can compel or be compelled to arbitrate under an arbitration provision in a contract." *Id.* at *13 (*citation omitted*).   Even though Newalta was not specifically named in the arbitration agreement, the Court found that Newalta was indeed a third-party beneficiary of the signatories' contract and, as such, had standing to compel Berryman to arbitrate his claims against Newalta under the arbitration agreement Berryman signed with Smith Management.  *Id.* at *20.

Similar to *Berryman*, Randstad is a staffing agency that hired Phillips for the sole purpose of placing him in a work assignment with customers of Randstad, in this case TCCC.  It was a condition of Phillips employment with Randstad that he agree to provide temporary services to Randstad customers and enter into the Talent Agreement and Arbitration Agreement, which provide that any disputes relating to his employment by Randstad, his work assignments and his wages and compensation, would be subject to binding arbitration and could not be the subject of a claim in court.  Based on these facts and circumstances, TCCC is an intended third-party beneficiary of the Talent Agreement and the Arbitration Agreement between Phillips and Randstad, and, therefore, has the right to enforce Phillips' agreement to arbitrate.

Phillips concedes that *Berryman* is analogous to this case, but attempts to distinguish *Berryman* because the arbitration agreement in that case covered claims "against the Company and/or…against any Company client."  [Doc. 8] ¶ 13.   But the Talent Agreement signed by Phillips requires arbitration of all claims "arising out of or relating to" that agreement.  In addition, the Arbitration Agreements cover claims that arise between Phillips and Randstad-related companies, and it is clear from those Agreements, that any third-party customer of Randstad is a Randstad-related company under the Agreements.   TCCC is a Randstad customer, and, therefore, TCCC is a Randstad-related company under the Agreements.   TCCC is, thus, a third-party beneficiary of both agreements.  *See Collins v. Int'l Dairy Queen,* 2 F. Supp. 2d 1465, 1469 (M.D. Ga. 1998) (where underlying contract clearly conferred benefits on non-signatories, third-party beneficiaries were entitled to enforce the arbitration provisions of contract); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Coors*, 357 F. Supp. 2d 1277, 1279-80 (D. Colo. 2004) (recognizing that nonparty agents and third-party beneficiaries have standing to compel arbitration); *Mut. Benefit Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 865 (D.N.J. 1992) (nonsignatories of contract may compel arbitration or be subject to arbitration if the nonparty is an agent of a party or a third party beneficiary to the contract).

### III.    Conclusion

For the reasons set forth above, TCCC's motion to compel arbitration as to Phillips' claim in this case is **GRANTED.**  Phillips is hereby ORDERED to submit his claims against TCCC to arbitration pursuant to the terms of the Talent Agreement and Arbitration Agreement, and all of Phillips' claims in this action are hereby **DISMISSED WITHOUT PREJUDICE**.

So Ordered this 9th day of April, 2019.

_____
William M. Ray, II
U.S. District Court Judge

Tendered by:

By:  */s/ Lisa H. Cassilly*
Lisa H. Cassilly
Georgia Bar No. 116030
lisa.cassilly@alston.com
Brett Coburn
Georgia Bar No. 171094
brett.coburn@alston.com
Kandis Wood Jackson
Georgia Bar No. 127324
kandis.jackson@alston.com

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone:  (404) 881-7000
Fax: (404) 881-7777

*Attorneys for Defendant The Coca-Cola Company*